UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

IN ADMIRALTY

CASE NO.: _____

IN THE MATTER OF:

THE COMPLAINT OF RANDAL TOCA
AS OWNER OF THE 1994 70'
HATTERAS M/Y MADAME MUSIQUE,
bearing HIN HATDP4421394 and ON
999308, and its ENGINES, TACKLE,
APPURTENANCES, EQUIPMENT,
ETC., for EXONERATION FROM OR
LIMITATION OF LIABILITY,

      Petitioner.
_____/

## COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY

Petitioner, RANDAL TOCA ("TOCA"), as Owner of the 1994 70' HATTERAS M/Y MADAME MUSIQUE, bearing HIN HATDP4421394, its Engines, Tackle, Appurtenances, Equipment, Etc. (the "Petitioner Vessel" or "MADAME MUSIQUE"), under Rule F, Supplemental Rules for Certain Admiralty and Maritime Claims and the Middle District of Florida Admiralty and Maritime Practice Manual, files his Complaint for Exoneration from or Limitation of Liability, and alleges as follows:

1. This is an admiralty and maritime action within the meaning of Rule 9(h), Federal Rules of Civil Procedure, and the Supplemental Rules for Admiralty or Maritime Claims.

2. Jurisdiction is proper pursuant to 28 U.S.C. § 1333 and 46 U.S.C. § 30501 *et seq.*

3. Venue is proper in this district because: 1) the events, acts, and circumstances giving rise to this action occurred in waters within or adjacent to this district, *i.e.*, navigable waters of the United States near Ft. Myers, Florida; and 2) the Vessel is located within this district.

4. The Petitioner Vessel is a 1994 70' HATTERAS named M/Y MADAME MUSIQUE, bearing HIN HATDP4421394 and Official No. 999308.

5. At all times pertinent to this Complaint, the Petitioner Vessel was owned by TOCA.

6. Upon information and belief, the potential Claimant's vessel, M/Y KNOT SPEED, Official No. 612986 (the "Claimant Vessel" or "KNOT SPEED"), is also currently located in this district.

7. KNOT SPEED, was at all times material, owned by Debonair Properties, LLC., with principal address at 4600 Summerlin Rd., C2-419, Ft. Myers, FL 33919.

8. The registered agent for Debonair Properties, LLC. is Corporate Legal Solutions, with an address in Ft. Myers, Florida.

9. The manager of Debonair Properties, LLC. is Ted Hobson, who resides in Ft. Myers, Florida.

10. At all times material to this action, the Petitioner Vessel was seaworthy; properly and efficiently manned, supplied, equipped, and furnished; and well and sufficiently fitted and supplied with suitable machinery, tackle, apparel, and appliances, all in good order and condition and suitable for the their intended use.

11. The incident that is the subject of this Complaint occurred on or about September 28, 2022, in the navigable waters of Ft. Myers, Florida, more specifically at Yacht Basin, a marina located at 1300 Lee St., Ft. Myers, Florida 33901.

12. The Incident which is the subject of this action involves an allision between the Vessel and KNOT SPEED during Hurricane Ian, and alleged property damage to KNOT SPEED due to said allision.

13. Prior to Hurricane Ian, MADAME MUSIQUE was docked in Boca Grande, Florida at Uncle Henry's Marina completing certain work on the vessel.

14. When Hurricane Ian began developing, TOCA hired Captain Tamm (who had done work for him in the past) to relocate the vessel in advance of the hurricane.

15. TOCA made a reservation near Lake Okeechobee for MADAME MUSIQUE to ride out the hurricane outside of the wind cone. Captain Tamm arrived on September 26, 2022. Certain work on the starboard main engine was still being completed, so the mechanic and his assistant remained onboard to assist should the engine have problems while moving the vessel.

16. MADAME MUSIQUE left Boca Grande on September 27. At approximately 5:45 p.m. they encountered a railroad bridge along the river that was closed and not responding to calls. This prevented the vessel from passing and proceeding to the reservation location.

17. The mechanic called the owner of another vessel he worked on, who told him there were open spots at Yacht Basin. Captain Tamm discussed this with Mr. Toca and it was agreed that, under the circumstances, it was the best location to seek safe harbor. Contact was attempted with the marina, but the office was closed.

18. MADAME MUSIQUE arrived at Yacht Basin later that night on September 27. The Captain tied up on the inside of the east/west dock, as it was atop a seawall. The vessel was secured port side at that location with the bow facing east. The crew secured the vessel using the following equipment on hand:

    a. Bow, stern, forward spring and aft spring lines;

    b. Newly purchased large black mooring lines, 1 inch diameter;

    c. Older mooring lines placed in the exact same positions to double the number of mooring lines at each cleat;

    d. The eyes of the mooring lines had built-in chafe protection and were located on the cleats of MADAM MUSIQUE; and

    e. The other ends of the mooring lines were tied to steel cleats on the dock.

19. Initially, the strong winds of Hurricane Ian were blowing from the south and pushing MADAM MUSIQUE against the dock. There were no waves inside the marina early on. Circumstances changed as the eye of the hurricane approached the marina. The winds shifted direction and began blowing from the north/northwest, pushing MADAM MUSIQUE away from the dock toward the inside of the marina.

20. Eventually, the waves increased and a storm surge started to develop, overwhelming the dock and coming into the marina. At this point, TOCA instructed Captain Tamm to slacken the mooring lines to allow for the vessel to move with the surge but remain tied to the dock- this was done.

21. Thereafter, waves of 4-5 feet began crashing over the dock and onto MADAM MUSIQUE. The port side of MADAM MUSIQUE holed against the concrete piling on the dock and it started taking on significant water. At this point, the crew got had to disembark for their owner personal safety, and took shelter in the marina bathrooms.

22. From his sheltered location, Captain Tamm was able to personally observe KNOT SPEED *before* MADAM MUSIQUE ever made contact with her, and KNOT SPEED was already partially submerged.

23. Mechanic Burich and assistant mechanic Long also observed KNOT SPEED *before* MADAM MUSIQUE ever made contact with her, and further observed that KNOT SPEED had two pilings penetrating its hull and that she was listing approximately 20 degrees.

24. Under the circumstances, the allision between MADAME MUSIQUE and KNOT SPEED was an unavoidable accident.

25. MADAME MUSIQUE was operated and secured at all times with reasonable care under the circumstances by the owner and her crew.

26. Prior to the allision, KNOT SPEED was forced upon the marina's pilings by the significant storm surge and winds caused by Hurricane Ian. The pilings penetrated the hull, causing water intrusion and submersion. This all occurred prior to any contact by the Petitioner Vessel.

27. The damage to Claimant's Vessel was not caused by the allision.

28. The Incident and any ensuing property loss, damages, personal injury and/or casualty were not caused by any negligence of Petitioner, or any person for whose actions Petitioner is responsible. Neither Petitioner nor the Vessel are liable to any extent, and Petitioner is entitled to exoneration from

liability from all losses, damages, and injury, occasioned and incurred by or as a result of the Incident.

29. Alternatively, and without admitting liability, Petitioner alleges that in the event he or the Vessel should be held at fault to any parties by reason of the Incident set forth above, Petitioner claims such fault was occasioned and occurred without the privity or knowledge of Petitioner or any person whose actions Petitioner is responsible, at or before the Incident.

30. Thus, and without admitting liability, in the event the Vessel is held responsible to anyone by reason of the matters set forth above, Petitioner claims the benefit of the limitation of liability provided in 46 U.S.C. § 30501 *et seq.*

31. Petitioner knows of a potential claim by or on behalf of Debonair Properties, LLC., owner of the KNOT SPEED, allegedly arising from the Incident, as Debonair Properties, LLC. has filed a Notice of Claim of Lien.

32. Petitioner alleges the amount of damages associated with the potential claims may exceed the amount of its interest in the Vessel.

33. The Vessel has a post-casualty value of $0. There was no pending freight. *See* Affidavit of Value filed as Exhibit A.

34. Subject to an express reservation of rights, Petitioner files contemporaneously herewith an *Ad Interim* Stipulation for Costs and Value

in the appropriate form, offering stipulation of the Vessel's value in the amount of $0.

35.   Should the Court require it, Petitioner is prepared to give stimulation, letter of undertaking, or bond for any amount as may be ascertained and determined to be necessary under orders of this Court, and as provided by the laws of the United States and Federal Rules of Civil Procedure.

36.   This Complaint is filed within six (6) months of Petitioners' receipt of first written notice of a possible claim against it, arising from the subject Incident and subject to exoneration from or limitation of liability.

**WHEREFORE**, Petitioner, as Owners of MADAME MUSIQUE, respectfully requests:

a) Upon filing the *Ad Interim* Stipulation for Costs and Value herein described, this Court issue a notice to all persons, firms or corporations asserting claims for any and all losses, damages, injuries or destruction with respect to which Petitioners seek exoneration from or limitation of liability admonishing them to file their respective claims with the Clerk of this Court and to serve on Petitioners' attorneys a copy thereof, on or before the date specified in the notice;

8

b) Upon filing the *Ad Interim* Stipulation for Costs and Value herein described, this Court issue an injunction, per Supplemental Rule F(3), restraining the commencement or prosecution of any action or proceeding of any kind against Petitioners, their underwriters, or any of its property with respect to any claim for which Petitioners seek limitation, including any claim arising out of or connected with any loss, damage, injuries or destruction resulting from the Incident described in the Complaint;

c) If any claimant who filed a claim shall also file an exception contesting the value of the Vessel or its pending freight, if any, as alleged herein, and the amount of the *Ad Interim* Stipulation for Costs and Value, this Court shall order an appraisement of the value of the Vessel following the loss, the value of Petitioner's interest therein and pending freight, if any, per Local Admiralty Rule F(7), and enter an Order for the filing of an amended stipulation for the aggregate value, as so determined, if any;

d) This Court adjudge Petitioner and the Vessel, and its owners, masters, crew, employees, and agents, not liable whatsoever for any losses, damages, injuries or destruction, or for any claim whatsoever done, occasioned or incurred as the result of the Incident; or, in the alternative, if the Court should adjudge that Petitioner is liable in

9

any amount whatsoever, that said liability may be limited to the value of Petitioner's interest in the Vessel, and may be derived pro rata among such claimants; and that a judgment be entered discharging Petitioner and the Vessel of and from any and all further liability and forever enjoining and prohibiting the filing or prosecution of any claims against Petitioner or its property as a result of or in connection with the Incident; and

e) This Court grant Petitioner such other and further relief that justice may require.

Dated:  May 2, 2023.

Respectfully submitted,

/s/  Krista Fowler Acuna
Krista Fowler Acuña
Fla. Bar No. 650791
HAMILTON, MILLER & BIRTHISEL, LLP
*Attorneys for Petitioners*
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
Telephone:  305-379-3686
Facsimile:   305-379-3690